# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

RENAISSANCE ACADEMY FOR MATH )
AND SCIENCE OF MISSOURI, INC., )
                                                                               )
          Plaintiff,                          )
                                                                              )    No. 4:13-CV-00645-NKL
     v.                                )
                                                                               )
IMAGINE SCHOOLS, INC.,                )
                                                                               )
          Defendant.                      )
                                                                               )

## ORDER

In November 2007, Plaintiff Renaissance Academy for Math and Science, a charter school, and Imagine Schools, a charter school management company, entered into an Operating Agreement in which Imagine Schools agreed to provide management services to Renaissance for the operation of its charter school. After the termination of their agreement, Renaissance filed this lawsuit against Imagine Schools alleging breach of fiduciary duty (Counts I-III), unjust enrichment (IV), conversion (V), and violations of the Racketeer Influenced Corrupt Organizations Act (RICO) (VI-VII). Before the Court is Imagine Schools' Motion for Partial Summary Judgment on Counts I-III of Renaissance's Amended Complaint, [Doc. 66]. The primary issue raised by the Motion is whether the undisputed facts establish that Renaissance and Imagine Schools had a purely contractual relationship or whether Imagine Schools had a fiduciary duty to

Renaissance. For the reasons set forth below, the Motion for Partial Summary Judgment is DENIED.

## I. Undisputed Facts

Imagine Schools is a full-service operator of public charter schools. [Doc. 88-1, ¶ 1]. Imagine Schools has considerable experience operating charter schools. *Id.* at ¶ 25. Imagine Schools contracts with each independent local charter school governing board. *Id.* at ¶ 2. The governing board oversees Imagine Schools, which has responsibility for the day-to-day operations of the charter school. *Id.* In November 2007, Imagine Schools and Renaissance entered into a Charter School Operating Agreement (Operating Agreement). Imagine Schools was required

> to provide all of the charter school management services provided for in [the Operating] Agreement, including without limitation the administration and supervision of the personnel, materials, equipment, and facilities necessary for the provision of the educational service to students, and the management, operation and maintenance of the Charter School . . . .

[Doc. 8-1, at p. 1]; [Doc. 88-1, ¶ 4]. Imagine Schools was also required to assist the Renaissance Board in locating a facility suitable for the operation of the school, [Doc. 8-1; at p. 3], was authorized to make purchases on behalf of the Board, *Id.*, had access to Renaissance's financial and educational records, *Id.* at pp. 2, 9, and used Renaissance's funds – which were deposited in an account established by Imagine Schools – to regularly pay the school's operating expenses, *Id.* at 10-11. Imagine Schools was also required to select and hire personnel to perform services at the school, and those personnel, including the principal, teachers, and non-instructional staff, were Imagine Schools' employees, unless otherwise agreed upon by the parties. *Id.* at p. 12.

The Operating Agreement was signed by Board President Tomika Booker after the Renaissance Board voted to approve it. Before Booker signed the Operating Agreement, the Renaissance Board received the Operating Agreement and discussed it at least once. [Doc. 88-1, ¶¶ 18-19]. The Renaissance Board was comprised of people from various backgrounds and experiences, such as a state legislator, an experienced educator and administrator and member of the Board of Trustees of the Kansas City Public School Retirement System, a former teacher, an associate pastor, and a PTA treasurer. *Id.* at ¶ 13. Before chairing the Renaissance Board, Booker served on the board of another charter school. *Id.* Under the Operating Agreement, the Renaissance Board of Directors was responsible for overseeing Imagine Schools' provision of management services, *Id.* at ¶ 5, and was responsible for ensuring that Imagine Schools fulfilled its obligations under the Operating Agreement, *Id.* at ¶ 16.

**II.     Discussion**

In Count I, Renaissance alleges Imagine Schools breached its fiduciary duty to Renaissance by using its access to Renaissance's funds to pay or loan itself and its employees unauthorized amounts of money. Counts II and III allege Imagine Schools breached its fiduciary duty by negotiating leases and amended leases detrimental to Renaissance and in favor of Renaissance's sister company, SchoolHouse Finance, while failing to disclose the relationship between Imagine Schools and SchoolHouse Finance. To succeed on a breach of fiduciary duty claim, Renaissance must establish the existence of a fiduciary duty between it and Imagine Schools, a breach of that duty by Imagine

Schools, and harm caused by the breach. *Zakibe v. Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 381 (Mo. Ct. App. 2000).

Imagine Schools argues summary judgment on Counts I-III should be granted in its favor because no fiduciary duty existed between Renaissance and Imagine Schools. To establish a fiduciary duty under Missouri law, a plaintiff must satisfy five elements:

> (1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance;
>
> (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party;
>
> (3) there must be a surrender of independence by the subservient party to the dominant party;
>
> (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and
>
> (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

*Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 294 (Mo. Ct. App. 1983). Further, absent these elements, a fiduciary relationship may still arise as a matter of law by virtue of the parties' relationship or as a result of the special circumstances of the parties' relationship, such as when "one person relies upon and trusts the other with the management of his property and attendance of his business affairs." *Shervin v. Huntleigh Securities Corp.*, 85 S.W.3d 737, 740-41 (Mo. Ct. App. 2002). Imagine Schools argues that Renaissance cannot meet elements (1), (3)-(5) and that no special relationship existed between the parties beyond an arms-length business relationship.

### A. Subservience to Imagine Schools as a Result of Inexperience/Ignorance

Imagine Schools argues Renaissance was not subservient to Imagine Schools because Renaissance Board President, Tomika Booker, had previous experience on another charter school board, was recruited to serve on the Renaissance Board because of that experience, and was therefore experienced with charter school management. However, the fact that Booker had experience serving on a charter school board does not mean that she was experienced in managing and facilitating the day-to-day educational, financial, and personnel operations of Renaissance, which was the subject of the service offered by Imagine Schools. Further, Imagine Schools concedes that the previous charter school was also managed by Imagine Schools. [Doc. 88, at p. 6]. This fact suggests that Booker did not have experience managing the operations of a charter school because her previous experience also involved management by a party other than the board of directors itself.

Imagine Schools also points to the credentials and backgrounds of other board members. While these credentials, such as state legislator and former teacher, certainly lead to the conclusion that the Renaissance Board was comprised of competent people, it does not lead to the undisputed conclusion that these people could have established and operated a charter school from the ground up without the substantial assistance of an experienced charter school management company. *Cf. Roth v. Equitable Life Assur. Soc. of U.S.*, 210 S.W.3d 253, 260-61 (Mo. Ct. App. 2006) (plaintiffs were not subservient to financial services company that sold plaintiffs investment vehicles because plaintiffs had an investment background, regularly invested, engaged in financial and estate planning,

5

and were familiar with complex contracts). The Operating Agreement between the Parties is instructive; Imagine Schools was hired to "provide all of the charter school management services" which included the procurement of facilities, equipment, and personnel necessary for the "management, operation and maintenance" of the school. [Doc. 8-1, at p. 1].

Imagine Schools also argues that Renaissance could not be subservient to Imagine Schools because Renaissance retained the authority to hire and to fire it at any time and to supervise its compliance with the Operating Agreement. While this is true, it is true for many fiduciary relationships – i.e. attorneys, brokers, and senior employees. The issue is not whether Renaissance, through the Board, had some authority to review the decisions of or terminate Imagine Schools; rather, the issue is whether Renaissance was so inexperienced and "ignorant" of the day-to-day operations of a charter school, that it heavily relied on the expertise and influence of Imagine Schools. *See Kratky v. Musil*, 969 S.W.2d 371, 379 (Mo. Ct. App. 1998) (plaintiff was not subservient because although plaintiff claimed he relied on advice of defendant, there was no evidence plaintiff was in any way less capable in business matters or real estate transactions); *Gibson v. Gibson*, 534 S.W.2d 100, 104 (Mo. Ct. App. 1976). Imagine Schools also points to a governance flow chart submitted by Renaissance when it was seeking its charter. The chart designates the University of Missouri as the sponsor, Renaissance under the supervision of the University of Missouri, and Imagine Schools under the supervision of the Renaissance Board. As discussed above, the fact that the Renaissance Board had some supervisory power over Imagine Schools does not preclude a finding

6

that Renaissance was subservient to Imagine Schools. A reasonable person, looking at the relative experience of the parties, could conclude that Renaissance was subservient to the mind and will of Imagine Schools.

### B. Surrender of Independence to Imagine Schools

Imagine Schools next argues that Renaissance did not surrender its independence to Imagine Schools because the Operating Agreement designates Imagine Schools as an independent contractor with limited discretion and because the Parties' relationship is based solely on the terms of the Operating Agreement, which gave Renaissance the authority to regulate, maintain, and manage the charter school.

As the Court said previously in its Order on Imagine Schools' Motion to Dismiss Counts I-III, [Doc. 24], while it is true that the Operating Agreement contains several instances of the phrase "subject to Board approval" and provides that the Board has a duty to assist Imagine Schools in certain aspects of management, Imagine Schools points to no law requiring Renaissance to relinquish complete control of all its decision-making authority to establish a fiduciary duty. In most instances of fiduciary relationships, the person to whom the duty is owed retains some decision-making authority, but in large part relies on the expertise of the dominant party to guide those decisions. Further, Imagine Schools does not explain how Imagine Schools' designation as an independent contractor leads to the conclusion that Imagine Schools did not owe a fiduciary duty to Renaissance.

Renaissance has submitted testimony from various Renaissance board members to support the inference that the Board relied on Imagine Schools to make decisions. Board

7

Member Frazier agreed that the Board relied on Imagine Schools to operate the school and surrendered the responsibility of operating the school on a day-to-day basis to Imagine Schools. [Doc. 82-3, at 57:15-58:2]. Board Member Rogers stated that Imagine Schools was the party in charge of the finances of the school. [Doc. 82-4, at 90:6-9]. He also testified that he "would imagine" that the Board could have voted not to allow Imagine Schools to take some action, but was not sure "whether it would have stood" because "without Imagine there wouldn't be a Board." *Id*. at 49:7-17. There is also evidence that Imagine Schools operated beyond its responsibilities in the Operating Agreement. For instance, Board President Booker testified that she was recruited to serve on the Board by Imagine Schools' vice president, that she did not initially know what her duties would be, and that she later found out what her duties would be from Imagine Schools' vice president. [Doc. 82-1, at 29:15-20; 32:23-33:11]. She also testified:

> The discussion was that, when we signed this operating agreement, we had given pretty much predominantly our control, as a board of directors, to the management company to manage both of the properties, to include the personnel, the budget and loans; that our primary responsibility in accordance to this operating agreement would be to hold our monthly meetings, to approve the budget that management company will put together, and to allow them to their - - to adhere to this agreement as far as running the school on behalf of the board of directors.

*Id.* at 49:13-50:4. This is not a case where an established school board, with concrete goals in mind, conducted a search for a management company to manage its schools, outlined its expectations with that company, and negotiated a mutually acceptable agreement where each party acted within and understood its own sphere of authority. To

8

the contrary, a reasonable person could conclude that while the Board supervised Imagine Schools, there was also significant influence exerted by Imagine Schools over the Board due to the Board's inexperience in starting and operating a charter school.

Imagine Schools relies heavily on *Chmieleski v. City Prods. Corp.*, 660 S.W.2d 275 (Mo. Ct. App. 1983). In *Chmieleski*, a store franchisee sued the franchisor alleging, among other counts, breach of fiduciary duty. Concluding that no fiduciary relationship existed between the franchisor and franchisee, the Missouri Court of Appeals remarked that there was no evidence which supported a finding that the franchisor ran the franchisee's store on a daily basis. *Id.* at 294. The franchisee was free in management decisions, including the hiring of personnel. *Id.* There was also evidence that the franchisee refused the advice of the franchisor and viewed its representatives as "useless." *Id.* The operating agreement also stated that the franchisee retained "full responsibility for the financing, management and operation of the" store and that the franchisor was not responsible for the results obtained in the operation of the store. *Id.*

The relationship between Imagine Schools and Renaissance is distinguishable. Not only does the testimony above create the inference that the Board relied heavily on Imagine Schools to make decisions for it, but the Operating Agreement itself gave Imagine Schools the power to "provide all of the charter school management services." [Doc. 8-1, at p. 1]. Imagine Schools employees were "agents" of the school and were entitled access to educational records. *Id.* at 2. Imagine Schools was "responsible and accountable" to Renaissance for the "administration, operation and performance" of the school. *Id.* Imagine Schools assisted the Board in locating a facility for the school, and

9

Renaissance was required to consult with Imagine Schools prior to making or accepting any material modification to the facility or to the terms of any lease. *Id.* at 3. Renaissance was required to abide by the terms and conditions of equipment leases between Imagine Schools and third parties. *Id.* at 4. Imagine Schools could make purchases "on behalf of" the Board. *Id.* at 3. Renaissance retained the authority to "make reasonable regulations" relative to the operation of the school, but only "after prior good faith consultation" with Imagine Schools. *Id.* at 7. Revenue was required to be deposited in an account established by Imagine Schools to be used by Imagine Schools to pay Renaissance's operating costs. *Id.* at 10. Imagine Schools selected Renaissance's principal, teachers, and staff, who were employees of Imagine Schools. *Id.* at 12. Based on the evidence presented by Renaissance, a reasonable person could conclude Renaissance surrendered its independence to Imagine Schools.

### C. Automatic or Habitual Manipulation of Renaissance's Actions

Imagine Schools argues it did not automatically or habitually manipulate Renaissance's actions because Imagine Schools was only doing what it was hired to do under the contract. However, Board Member Frazier testified that Imagine Schools hired the school's personnel, was responsible for the "day-to-day" operation of the school, and regularly paid Renaissance's bills using funds in an account set up by Imagine Schools to receive Renaissance's revenue. [Doc. 82-3, at 57:6-59:22]. The Operating Agreement is also instructive. For instance, Imagine Schools was required to assist Renaissance in procuring equipment and supplies. Imagine Schools could make purchases on behalf of Renaissance using its funds. [Doc. 8-1, at p. 3]. Imagine Schools was required to

10

regularly pay facility payments, equipment lease payments, and other operating expenses. *Id.* at 10-11.

Imagine Schools appears to argue that because these duties were outlined in the Operating Agreement, no fiduciary relationship can exist. However, just because the duties of the Parties were outlined in an agreement does not preclude a finding that a fiduciary relationship existed, where, as here, there is evidence of unequal bargaining power and extraneous circumstances. *See In re Express Scripts, Inc., PBM Litig.*, 522 F.Supp.2d 1132, 1133 (E.D. Mo. 2007); *see also* [Doc. 24, at p. 8-10] for a discussion on *In re Express Scripts*. While it is true that a contractual relationship does not automatically give rise to a fiduciary duty, it is not true that a contractual relationship precludes the existence of a fiduciary relationship. If Frazier's testimony and that of other board members is believed as true, a reasonable person could find that Imagine Schools directly and indirectly manipulated Renaissance's actions.

### D. Trust and Confidence in Imagine Schools

Imagine Schools further contends that at most, Renaissance's evidence shows only that Renaissance unilaterally decided to repose trust and confidence in Imagine Schools. A "[f]iduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary which is recognized by the law as justifying such reliance." *Pool v. Farm Bureau Town & Country Ins. Co. of Missouri*, 311 S.W.3d 895, 907 (Mo. Ct. App. 2010). However, a reasonable person could conclude that Renaissance did not unilaterally repose trust in Imagine Schools. Board Member Frazier testified that the Board relied on Imagine Schools' expertise,

11

entrusted Imagine Schools with the managements of its supplies, equipment, and finances, and placed its trust in Imagine Schools. [Doc. 82-3, at 56:3-25; 59:23-60:12]. The Operating Agreement – drafted by Imagine Schools – states that Imagine Schools was given access to Renaissance's budget, including state and federal funding and grants, and student and financial records. It also states that Imagine Schools was "responsible and accountable" to Renaissance's Board. [Doc. 8-1, at p. 2].

Based on the evidence presented by Renaissance, a reasonable person could conclude that a fiduciary relationship existed between Imagine Schools and Renaissance and that Imagine Schools owed a fiduciary duty to Renaissance.

### E. Purely Business Relationship

Imagine Schools argues that the relationship between the Parties is purely a business relationship. It contends that in this case there is no exception to the general rule that a business relationship does not create a fiduciary duty. However, Renaissance has presented sufficient evidence for a reasonable person to conclude that the Parties' had a special relationship giving rise to a fiduciary duty. Renaissance reposed its trust in Imagine Schools with respect to control of its property and business affairs. *See Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 737, 741 (Mo. Ct. App. 2002). Renaissance has also presented evidence that the relationship between Imagine Schools and Renaissance was more than just an arms-length agreement. For example, after the Operating Agreement was signed, Imagine Schools' vice president met with the Board to explain the terms of the agreement, suggesting the Board relied on Imagine Schools to explain the Parties' roles. [Doc. 82-1, at 33:8-11; 54:6-24]. Imagine Schools' representatives frequently

attended board meetings and presented information. [Doc. 82-1, at 102:3-11]; [Doc. 82-4; 22:6-19; 82:24-83:4]. Imagine Schools' vice president recruited Renaissance's Board President and explained what role she would play. [Doc. 82-1, at 29:15-20; 32:23-33:11]. Board Member Rogers was asked to join the Board by Renaissance's principal, who was an Imagine Schools employee. [Doc. 82-4, 16:25-17:17]. Board Member Rogers believed that "without Imagine, there wouldn't be a Board, wouldn't be a school" and that the school "originated out of Imagine." [Doc. 82-4, at 49:13-17, 21-24]. This evidence suggests that some members of the Renaissance Board were unaware that Renaissance was even a separate entity from Imagine Schools, let alone an entity with arms-length bargaining power. A reasonable person could conclude that Imagine Schools, an experienced charter school management company, induced the Renaissance Board into relying on that experience to handle its property and business and educational affairs. Therefore, even if Renaissance had failed to present sufficient evidence to survive Imagine Schools' Motion for Partial Summary Judgment on the *Chmieleski* factors, it also presented sufficient evidence to create the inference that a special relationship between the Parties existed which could give rise to a fiduciary duty owed by Imagine Schools. Accordingly, the Motion for Partial Summary Judgment is denied.

### III. Conclusion

For the reasons set forth above, Imagine Schools' Motion for Partial Summary Judgment on Counts I-III is DENIED.

                                                                     s/ Nanette K. Laughrey
                                                                      NANETTE K. LAUGHREY
                                                                      United States District Judge

Dated:  August 4, 2014
Jefferson City, Missouri