# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

RENAISSANCE ACADEMY FOR MATH )
AND SCIENCE OF MISSOURI, INC., )
                                                )
          Plaintiff,       )
                                                )   No. 4:13-CV-00645-NKL
     v.                    )
                                                )
IMAGINE SCHOOLS, INC.,         )
                                                )
         Defendant.      )
                                                )

**ORDER**

In November 2007, Plaintiff Renaissance Academy for Math and Science and Defendant Imagine Schools entered into a Charter School Operating Agreement (Operating Agreement) in which Imagine Schools agreed to provide management services to Renaissance for the operation of its charter school. Part of that Operating Agreement contained a jury trial waiver provision. Before the Court is Defendant Imagine Schools' renewed Motion to Strike Request for Jury Trial, [Doc. 68]. For the reasons set forth below, the Motion is GRANTED.

**I.    Background**

In August 2013, before any substantial discovery was conducted, Imagine Schools filed a motion to strike Renaissance's demand for a jury trial on the basis that the Operating Agreement entered into by the Parties contained a waiver of jury trial

1

provision. [Doc. 7]. Renaissance did not dispute that the waiver existed, but argued that the unequal bargaining positions between the Parties made enforcement of the waiver inequitable and unjust. The Court denied Renaissance's motion after concluding that Renaissance had alleged sufficient facts to raise a question of whether the waiver was agreed to knowingly and voluntarily and because there was no evidence Renaissance consulted an attorney prior to signing the contract. [Doc. 24, at pp. 17-18]. Imagine Schools has filed a renewed motion to strike Renaissance's jury request on the basis that evidence obtained by Imagine Schools during the discovery process shows that Renaissance knowingly and voluntarily waived its right to a jury trial.

## II.     Discussion

Whether a jury waiver is enforceable in a diversity action is governed by federal law. *See Simler v. Conner*, 372 U.S. 221, 222 (1963). The Seventh Amendment guarantees a right of trial by jury in suits of common law. However, a party may waive this right by contract if the waiver is made knowingly and voluntarily. *Hillcrest Bank, N.A. v. Cordsen*, 2011 WL 2633273, at *1 (W.D. Mo. 2011) (citing *Popular Leasing USA, Inc. v. Nat'l Restoration Sys., Inc.*, 2005 WL 2033423, at *1 (E.D. Mo. 2005)). Determining whether a waiver was made knowingly and voluntarily requires a fact-driven analysis, *Popular Leasing USA*, 2005 WL 2033423, at *1, and requires looking at the circumstances surrounding the waiver, such as negotiability of the contract terms, disparity in bargaining power between the parties, business acumen of the party opposing the waiver, conspicuousness of the waiver, and whether the waiving party first consulted

with an attorney. *U.S. Bank Nat'l Ass'n v. Canny*, 2011 WL 226965, at *4 (E.D. Mo. 2011).

A. **Negotiability of Contract Terms**

Renaissance argues the contract was not negotiable because the agreement was standardized and because Renaissance had no input in the contract. However, Renaissance has submitted no evidence to suggest that any member of the Renaissance Board of Directors attempted to alter any part of the Operating Agreement and was denied the opportunity to do so. *Hillcrest Bank,* 2011 WL 2633273, at *2 (concluding that party who signed jury trial waiver had at least some power to negotiate the provisions of the loan documents, but declined to exercise it, and concluding that there was no evidence that the other party would have refused to negotiate with respect to the waiver). In contrast, Imagine Schools submitted an affidavit from Renaissance Board Member Michael McGhee, who stated that board members were provided a copy of the operating agreement "well before" it was signed, that the Operating Agreement was the subject of discussion at multiple board meetings, that board members had "ample opportunity" to question and consider the provisions of the Operating Agreement, that no pressure was exerted on the Board to sign the Operating Agreement, and that board members were aware they had the power and authority to decline to accept any provision in the Operating Agreement. [Doc. 69-2]. Further, the fact that the jury waiver at issue was included in a standardized contract does not alone bar its enforceability. *Westgate GV at the Woods, LLC v. Dickson*, 2010 WL 4721245, at * 2 (W.D. Mo. 2010).

B. **Disparity of Bargaining Power**

Renaissance reiterates that Imagine Schools is a national charter school management company and that the Renaissance Board was comprised of laypersons. Renaissance also argues it was required to sign the Operating Agreement in order to operate its school and to obtain the substantial funds necessary to open the school. [Doc. 9-3, ¶ 11]. However, Imagine Schools submitted an affidavit from its chief financial officer, Barry Sharp, stating that prior to entering into the Operating Agreement, Imagine Schools spent considerable sums of money at its own risk to prepare for the opening of Imagine Schools and that the Operating Agreement was signed approximately two months after the school opened. [Doc. 85-2, ¶¶ 4, 6, 8]. This evidence supports a finding that both Parties faced financial risk and that Renaissance was not required to sign the contract before opening the school. Further, Renaissance Board Member Curtis Rogers stated that the Board was aware it had the right to contract with any third party educational management company. [Doc. 85-1, at 61:12-62:5]; *see Hillcrest Bank,* 2011 WL 2633273, at *2 (party who signed the contract had business relationship with other banks, creating the inference that party had at least some leverage to negotiate the waiver provision).

### C. Business Acumen

Renaissance argues that enforcing the waiver would be unjust because the Renaissance Board was comprised of laypersons with no business or legal experience. Board President Booker stated that prior to serving on the board of directors for Renaissance, the board members had little previous experience with charter school operation or management and that none of the board members were lawyers or

4

businesspersons. [Doc. 9-3, ¶¶ 3-4]. While it may be true that the Board had little experience in the operation and management of a charter school, this lack of experience does not mean that Renaissance board members were otherwise unable to understand the terms of the Operating Agreement. There is a difference between experience in operating a school and experience reading and understanding a contract. Prior to becoming president of the Renaissance Board, Booker served on the board of another charter school which also negotiated a contract with Imagine Schools. [Doc. 69-3, at 16:8-25; 29: 8-25]. Board Member Wanda Frazier also had charter school experience. [Doc. 85-4, at 8:15-10:1]. Board Member McGhee was a state legislator and served on the board of several non-profit organizations. [Doc. 69-2, ¶¶ 2-3]. Board Member Rogers had a Master's of Science degree in secondary school education, was an experienced high school principal, served on the Board of Community Development Corporation, and was a Member of the Board of Trustees of the Kansas City Public School Retirement Fund. [Doc. 85-3, at 9:4-21; 10:1-4; 11:7-12:2; 18:20-25; 79:8-16; 80:10-13]. While it is true none of these board members are lawyers or businesspersons, Renaissance has presented no evidence that these otherwise experienced people were unable to understand the jury trial waiver. *See Hillcrest Bank*, 2011 WL 2633273, at *2 (party who signed the contract was a real estate developer with 51 years of experience and had sufficient business acumen to understand that he was waiving his right to a jury trial); *Westgate GV at the Woods*, 2010 WL 4721245, at * 2 (customers who purchased a timeshare could understand unambiguous jury waiver language even though one customer could not read above a second-grade level because his wife also signed the agreement and did not contend that she did not

5

understand); *Popular Leasing USA*, 2005 WL 2033423 (president of company signed the agreement indicating some sophistication).

### D. Conspicuousness of Waiver

The waiver was in its own, set-off paragraph, was in the same size of text as the rest of the contract, and was not buried in lines of text. The language is clear and unambiguous, and Renaissance has not argued that it misunderstood the provision, that it was vague, or that Imagine Schools misrepresented its meaning. Board President Booker stated that prior to signing the Operating Agreement, there was no discussion between the Board and Imagine Schools regarding the waiver and that the provision was not brought to her attention. However, in her deposition, Booker testified that she read the Operating Agreement before she signed it. [Doc. 85-3, at 53:15-17]. Board Member Rogers also testified that he "probably" read it and that he "would have understood it once [he] read it" because it was "pretty straightforward." [Doc. 85-1, at 37:8-38-2]. Board Member McGhee stated in an affidavit that at the time he voted to approve the Operating Agreement, he reviewed and understood "all of the provisions in the Operating Agreement, including but not limited to the Jury Trial Waiver." [Doc. 69-2, ¶ 13].

### E. Opportunity to Consult with an Attorney

Although it appears Renaissance did not first consult an attorney before signing the Operating Agreement, Imagine Schools has presented evidence that Renaissance considered seeking legal counsel, but ultimately chose not to do so. At a board meeting four months before the Operating Agreement was signed, Imagine Schools submitted various documents to Renaissance for review. [Doc. 85-5, at p. 3]. Board Member

Rogers asked whether Renaissance had retained legal counsel and if so, whether the documents had been reviewed. Board President Booker said the documents had not been reviewed but that they "could later budget for legal counsel." *Id.* This evidence suggests that the Renaissance Board knew of the importance of legal review nearly four months before signing the Operating Agreement. Renaissance cannot now use its own business decision not to consult an attorney as evidence that its execution of the jury trial waiver was involuntary. *See Westgate GV at the Woods*, 2010 WL 4721245, at * 4 (Though the customers did not consult an attorney prior to signing the contract, they had an opportunity to do so and could cancel the contract within five days after execution. They also could have consulted an attorney during the five months between signing the first contract and the two additional contracts.); *Hillcrest Bank*, 2011 WL 2633273, at *2 ("Although counsel for [d]efendants did not actually review the loan documents containing the waiver provisions, counsel had an opportunity to do so and could have done so if [d]efendants had wanted counsel to review it.").

### III. Conclusion

There is a clear waiver in the agreement and the undisputed facts show that Renaissance knowingly and voluntarily waived its right to a jury trial. Therefore, Imagine School's Motion to Strike Request for Jury Trial, [Doc. 68], is GRANTED.

                                       s/ Nanette K. Laughrey
                                       NANETTE K. LAUGHREY
                                       United States District Judge

Dated: August 4, 2014
Jefferson City, Missouri